**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF ILLINOIS**

| | |
|---|---|
| **LISA A. JOHNSON,**<br><br>**Plaintiff,**<br><br>**v.**<br><br>**SOUTHERN ILLINOIS UNIVERSITY EDWARDSVILLE,**<br><br>**Defendant.** | **Case No. 3:25-CV-02144-NJR** |

# MEMORANDUM AND ORDER

**ROSENSTENGEL, District Judge:**

Pursuant to Federal Rule of Civil Procedure 26 and the agreement of the parties, the Court enters this order regarding the preservation and production of documents and electronically stored information ("ESI") in this case ("ESI Order").

## I. In General

1. The purpose of this ESI Order is to facilitate the timely, efficient, and economical production of discoverable and responsive documents and ESI in this case.

2. This ESI Order shall be binding on all parties to this case and their attorneys of record, and its provisions shall govern the preservation and production of documents and ESI in this case unless and except to the extent that the parties (or the affected parties) otherwise agree in writing or the Court otherwise orders.

3. The designation of documents and ESI produced in this case as containing Confidential Information and any restrictions on the use and disclosure of same shall

be governed by the Protective Order (Doc. 18) entered by the Court and incorporated here by reference. The parties are not aware of, and do not intend, any conflict between the treatment of Confidential Information pursuant to this ESI Order and the Protective Order.

4. This ESI Order is not intended and shall not be construed as a ruling by the Court on the discoverability, relevance, authenticity, or admissibility of any documents, data, or information in this case. All objections to discovery requests are expressly preserved and shall be raised in due course as permitted by the rules. With the exception of actions this ESI Order expressly requires a producing party to take and information it expressly requires a producing party to disclose or produce to a requesting party, this ESI Order is not intended and shall not be construed as a ruling by the Court on the subject matter or temporal scope of permissible discovery in this case or as a determination by the Court about whether the likely burden or expense of any proposed discovery outweighs the likely benefit, taking into account the factors set forth in Fed. R. Civ. P. 26. Either party may raise any of these issues with the Court by timely objection or motion.

5. This ESI Order shall not preclude any party from raising any proper objection to the admissibility at trial of any document or ESI produced in this case.

6. This ESI Order is not intended to define all the rights and obligations of the parties regarding the preservation of potentially discoverable documents and ESI or the production in this case of discoverable and responsive documents and ESI, to narrow or enlarge any party's obligation under applicable law to preserve potentially

discoverable documents and ESI, or to limit or enlarge any remedy that may be available for the breach of any such obligation.

7. To further facilitate the timely, efficient, and economical production of documents and ESI in this case and to limit the Court's involvement in the discovery process to circumstances where such involvement is necessary, the parties (or the affected parties) may at any time, by an agreement confirmed in writing, waive, modify, or resolve any ambiguity in any provision of this ESI Order.

8. No motion seeking the waiver, modification, or construction of any provision of this ESI Order, or any relief expressly authorized by or otherwise based on any provision of this ESI Order, shall be filed until the party seeking such relief has complied with the Court's local rules and/or orders regarding meet-and-confer conferences.

## II. Definitions

1. For purposes of this ESI Order and any anticipated agreements relating to the production of ESI, the following definitions shall apply, unless any such definition conflicts with the Federal Rules of Civil Procedure, in which case, the Federal Rules of Civil Procedure shall govern.

a. *Cache file* means a copy of data created by a computer system to a temporary location or "cache" that allows frequently used data to be accessed more quickly by the computer.

b. *Case* means the above-captioned lawsuit.

c. *Chat* means any form of communication over an intranet, the internet, or other network, including instant messaging and video chat, that offers real-time transmission of text messages or video from sender to receiver, whether point-to-point from a sender to one receiver, or multicast from one

sender to many receivers, whether such communications are transmitted over a party's or third-party's network and whether facilitated by an application residing on a party's or a third-party's network or device.

d. *Cookie file* means a file that a web browser creates on a user's computer system that a website uses to identify the user and information about the user.

e. *Custodian* means a person who had or has possession, custody, or control of documents or ESI.

f. *Document* means any written, typed, printed, recorded, imaged, or graphic information or data, including ESI.

g. *Electronically stored information* or *ESI* means any writing, drawing, graph, chart, photograph, sound recording, image, and other data or data compilation stored in any medium from which such information can be obtained either directly or, if necessary, after translation by the producing party into a reasonably usable form, including any hard-copy document scanned and stored electronically as a static image.

h. *Extracted text* means a file or files containing text extracted from a document and shall include all available information contained in the document's body and in any header, footer, comments, and notes that are part of or appended to the document.

i. *Family* means a group of documents that includes a "parent" document such as an email, memorandum, or report and one or more "child" documents such as attachments or embedded files. A document family need not include .gif or .jpeg files with no substantive content, such as banners and logos.

j. *Hard copy documents* means documents that are maintained in the ordinary course of business in a tangible format, such as paper or micro fiche. The generic term "documents" shall include hard copy and electronic documents.

k. *Hash value* means the unique numeric value identifying a specific document, generated by a standard algorithm disclosed by the parties.

l. *Load file* means an electronic file containing information identifying and describing a production set of scanned documents or processed ESI, including where individual pages or files belong together as documents, associating attachments with their parent documents, associating documents with members of their document family, and identifying where each document

begins and ends, and containing information about the individual documents, including any extracted or user-created metadata and OCR or extracted text.

m. *Media* means a disc, tape, solid-state drive, computer, or other device used to store data.

n. *Metadata* means information describing characteristics of a file, generated by the application that created or modified it or generated automatically by a computer or network operating system on which the file is located.

o. *Native format* means the format in which a file was originally created or modified (in contrast to a static image, such as a .tiff or .pdf file, of a file originally created by a different application).

p. *Networked* or *shared storage system* means any physical or virtual data storage device that is accessible to multiple users.

q. *OCR file* means a searchable text file created by an optical character recognition application from a static image or scanned hard-copy document.

r. *Person* means an individual; a private or public for-profit or non-profit corporation, company, partnership, firm, association, cooperative, foundation, business trust, or other organization; a unit of government, government agency, department, or board, or other public entity; or a college, university, or school or department thereof.

s. *Preserve* or *preservation* means to prevent the destruction, alteration, deletion, shredding, incineration, wiping, or theft of documents or ESI.

t. *Produce* and *production* mean the transmission or delivery of documents by one party to another party, whether voluntarily or in response to a formal or informal request, and the transmission or delivery of documents by a third party to a party, whether voluntarily or pursuant to subpoena, for the purpose of discovery in this case.

u. *Producing Party* means the party with the obligation to produce ESI.

v. *Receiving Party* means a party to whom ESI is produced to.

w. *Rolling production* means a process in which a producing party responds to a request for production incrementally, by making a series of deliveries of responsive documents and ESI to the requesting party.

x. *Search term* means a word or string of words or phrases related by proximity or search operators for the purpose of identifying potentially discoverable ESI.

y. *Specified Time Period* means the period of time for which documents or ESI created, revised, modified, saved, sent or received may be subject to production. The specified time period may vary by party, issue, subject matter, or other factors, and will be determined either by agreement of the parties, or by order of the Court.

z. *Static image* means a representation of ESI produced by converting a native file or a hard copy document into a standard image format, such as Tagged Image File Format (TIFF), Portable Document Format (PDF), or Joint Photographic Experts Group (JPEG) format, which can be displayed and printed on multiple computer platforms using a commonly available application.

## III. Preservation

1. The parties shall preserve all discoverable or responsive documents and ESI reasonably expected to exist, including any metadata that may exist. If any such documents and ESI are likely contained on a source that a party identifies as not accessible, the parties will meet and confer with respect to the preservation requirements, if any, that the party should undertake with respect to any sources that are not accessible.

2. The parties recognize that platform changes, upgrades, and other system modifications are often necessary for business or security purposes, and the parties will use their best efforts to avoid altering potentially discoverable ESI prior to collection. If a party intends for business purposes to retire a source of potentially responsive documents or ESI prior to collection, it shall give reasonable notice to all counsel in writing, including a description of the source in question, the nature of the potentially

responsive documents and ESI it contains, and the location of identical, accessible ESI (if any), and shall allow a reasonable time thereafter for any objections.

3. Parties have no obligation to preserve ESI created automatically by the routine operation of a computer system or application, including metadata, cookie files, cache files, temporary system files, and ESI filtered out by an automatic spam or virus filter. To the extent a party knows of ESI in its custody or control that are discoverable or responsive to a request for production then this paragraph shall not relieve them of their obligation to preserve this information. Furthermore, no party shall be in violation of this protocol as a result of any of the following actions undertaken in good faith and in the ordinary course of business and not for any reason related to this case:

a. inputting, accessing, updating or modifying a database, provided the underlying potentially discoverable data is not altered, deleted, modified or rendered inaccessible prior to collection;

b. editing, modifying, or taking down an internet, extranet, or intranet site provided all potentially discoverable documents and ESI are preserved and remain accessible;

c. editing or revising a discoverable document or discoverable ESI, as long as an unedited or unrevised original version is preserved.

## IV. Search Methodologies for ESI Productions

1. Prior to engaging in any search methodologies, including, but not limited to, search terms, technology assisted review, or other methods, the parties will meet and confer and attempt to reach agreement. The parties shall in good faith attempt to reach agreement on search protocols, such as the use of agreed-upon search terms, for identifying, searching, and review of documents that may be produced prior to any productions. If no agreement can be reached, then the parties may present the dispute

to the Court. Each party may use one or more methods to collect, search, and review documents for production, and to produce discoverable non-privileged ESI that is responsive to another party's request for production. To the extent the producing party knows of documents and data in its custody or control that are discoverable or responsive to a request for production, then its use of one or more of these methods, shall not relieve it of its obligation to produce that information.

**V. Production Format**

1. The parties agree all ESI, including emails, will be produced as static PDF files with consecutive, non-duplicative Bates numbers affixed. This includes Excel documents. However, the parties agree to meet and confer on the appropriate format of production depending on the volume of ESI to be produced.

2. Consistent with Fed. R. Civ. P. 34(b)(2)(E)(iii), the parties presumptively need not produce the same ESI in more than one form. However, should any party believe it appropriate to obtain a document in native format to review metadata, the party will designate the specific pages or documents for which a native format file is sought and the reasonable basis therefore (e.g., when the original creation date of a document is at issue, when a static image is not reasonably usable, or when a PDF file is unable to display all information contained in a spreadsheet such as an Excel file). The parties will make reasonable efforts to coordinate production of the document in native format where reasonable, and court intervention will be sought only if the parties cannot so coordinate.

3. If any original hard copy document has any note or attachment affixed to it, the producing party shall scan and produce copies of the original hard-copy document along with all notes and attachments to it in the same manner as other documents. If any such note or attachment obscures any information on the original hard copy document, the producing party shall also produce a copy of the original hard-copy document without the note or attachment affixed in order to make the underlying document visible in its original form.

4. A producing party shall use best efforts to preserve parent-child relationships (the associations between and among a parent document and its attachments) when scanning hard copy documents.

5. If a receiving party notifies the producing party that a document's OCR text is of poor quality, the producing party will use reasonable efforts to provide a replacement file of better quality or alternatively explain why it is unable to do so.

6. The parties agree that a producing party may review only the most inclusive email thread.

**VI. Assertions of Privilege**

1. To expedite and facilitate the production of electronic and hard copy data, information, and documents, and to protect against inadvertent disclosures of attorney-client privileged communications or work product materials, the parties agree that the inadvertent disclosure or production of any information or document that is subject to an objection on the basis of attorney-client privilege or work-product protection, will not be deemed to waive a party's claim to its privileged or protected nature or estop

that party or the privilege holder from designating the information or document as attorney-client privileged or subject to the work product doctrine at a later date.

2. The producing party shall produce a rolling privilege log of withheld and redacted documents within 30 days after the document was withheld from the rolling production.

3. Privilege logs shall contain:

a. Document date (date created or last modified) for non-email messages, or date sent for email.

b. The identity of each person who sent, authored, signed or otherwise prepared the document, including which were employed and acting as licensed attorneys in good standing, as reflected in the document's metadata.

c. The identity of each person designated as an addressee or copyee, including which, if any, were employed and acting as licensed attorneys in good standing, as reflected in the document's metadata. This shall include blind copyee(s).

d. A general description of the contents of the document that, without revealing information itself privileged or protected, is sufficient to understand the general subject matter of the document and the basis of the claim of privilege or other protection from disclosure, and the location of any redaction if the redaction was applied to a native file.

e. The nature of the privilege or protection asserted (*i.e.*, attorney-client privilege; work product doctrine), and if no privilege claim is asserted, the basis of withholding the document or any portion thereof.

f. Where multiple email messages are part of a single chain or "thread," a party is only required to include on a privilege log the most inclusive message ("Last In Time Email") and need not log earlier, less inclusive email messages or "thread members" that are fully contained within the thread, provided that the log entry includes the names of the authors, addressees, and recipients (including copyees and blind copyees) for all thread members, that the description of the thread include the factual bases sufficient to support the claim of privilege for each thread member over which privilege is asserted, and that the log entry include the privilege designations applicable to any thread members.

4. The following types of communications shall be presumed to be protected by the attorney-client privilege or to constitute attorney work product. Documents and ESI consisting of such communications need not be included on a party's privilege log:

a. Communications exclusively between or among a party's attorneys;

b. Outside counsel files;

c. Communications exclusively between plaintiff and her attorneys;

d. Communications exclusively between defendant and its counsel of record;

e. Communications exclusively between or among a party's attorneys and expert consultants hired for purposes of litigation;

f. Work product of any party's attorney(s) created after the filing of this lawsuit.

5. Pursuant to Federal Rule of Evidence 502(d), a producing party that discloses information subject to a claim of attorney-client privilege, the work-product doctrine, or other applicable privilege does not as a result waive or forfeit any such claim that it would otherwise be entitled to assert regarding that information.

**VII. Costs**

1. Absent an Order of the Court to the contrary, each party shall be responsible for the cost of preserving and producing documents and ESI that are in its possession or control.

**IT IS SO ORDERED.**

**DATED: May 1, 2026**

Nancy J. Rosenstengel

**NANCY J. ROSENSTENGEL**
**United States District Judge**